C. WAYNE GODSEY AND RON DePAOLIS v. WILLIAM E. POE, CHARLOTTE-MECKLENBURG BOARD OF EDUCATION, ET AL

No. 7726SC641

(Filed 20 June 1978)

**Schools § 4— open meetings law—board of education—filling superintendent vacancy—procedure for holding closed meetings**

Defendant board of education did not violate G.S. 143-318.3(b), the Open Meetings Law, in holding closed meetings in March 1977, in the absence of a prior public resolution, for the purpose of interviewing applicants for the posi-

---

Godsey v. Poe

---

tion of school superintendent, since the requirement of public resolution set forth in G.S. 143-318.3(a), providing for *executive* sessions, is not applicable to subsection (b) providing for *closed* sessions.

APPEAL by defendants from *Snepp, Judge.* Order entered 21 April 1977 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 3 May 1978.

This action was originally instituted by a complaint filed on 7 May 1973 in which the plaintiffs alleged that the defendants, members of the Charlotte-Mecklenburg Board of Education, violated the Open Meetings Law, Article 33B of Chapter 143 of the North Carolina General Statutes, by holding closed meetings without first voting to do so in regular session. The plaintiffs sought an injunction to prevent any further contravention of the law. On 19 July 1973 an order was entered to which all parties consented in which the trial court found that by its past actions the defendants had violated G.S. 143-318.1, *et seq.* and ordered that the defendants be

> restrained and enjoined from holding any closed or executive meeting, . . . for the purpose of conducting hearings, participating in deliberations or voting upon, or otherwise transacting, public business of the defendant Charlotte-Mecklenburg Board of Education, except as to those matters specified in N.C. G.S. 143-318.3, and then only after having followed the procedure prescribed therein for holding an executive or closed session.

On 4 June 1976 the plaintiffs filed a motion that the defendants be held in contempt for their wilful failure to act in accordance with the order of 19 July 1973. At the conclusion of a hearing on the plaintiffs' motion on 7 July 1976, the trial court ordered the parties to establish guidelines to aid the defendant Board of Education in its efforts to comply with the General Statutes of North Carolina. By order dated 12 April 1977 the trial court found that the school board had met in executive session on several occasions in 1975 and 1976; concluded that such meetings constituted violations of the court's order of 19 July 1973 and criminal contempt under G.S. 5-8(1); modified the order of 19 July 1973 to incorporate the guidelines agreed upon by the parties; and ordered that the defendants be restrained from conducting

meetings except as provided by the guidelines and "that the defendants . . . are hereby purged of contempt."

On 15 April 1977 a hearing was conducted pursuant to the plaintiffs' motion of 25 March 1977 that the defendants be found in contempt for further violation of the order of 19 July 1973. In this motion the plaintiffs alleged that the defendants conducted several closed meetings in March of 1977 in violation of G.S. 143-318.1, *et seq.* The trial court entered an order on 21 April 1977 in which it found the following facts:

4. On March 7, 1977 the defendant Robert D. Culbertson, who was Chairman of a committee to seek a new superintendent for the Charlotte-Mecklenburg school system reported to the members of the Board at a regularly called open meeting that executive or closed sessions of the Board should be held to interview candidates for the position. Enquiry was made of one of the Board's attorneys who was present whether such sessions could be scheduled and then continued from time to time without an additional resolution of the Board. The defendant Culbertson moved and the defendant Huff seconded a motion that the Board meet in executive or closed session to consider candidates for the position of superintendent, subject to further instructions to be given at a later date by counsel for the defendants. No date or time for such meetings were stated in the resolution.

5. Thereafter, the defendant Berry, Chairman of the Board, advised the defendant Culbertson that he had conferred with the Board's counsel, and that it would be proper to hold the meetings if the members did not discuss therein the merits of any candidate.

6. On or about March 14 and on two occasions thereafter the defendants, without adopting any resolution in open session, met in closed sessions at undisclosed locations, and interviewed candidates. Defendants questioned each candidate as to his educational philosophy, the operation of the system in which he was presently employed, and as to other matters having to do with his qualifications for superintendent of the Charlotte-Mecklenburg school system.

7. The said meetings were not held pursuant to the votes of a majority of the members of the Board during a regular or special meeting when a quorum was present.

8. The individual defendants willfully attended such closed and secret sessions and participated in the questioning of various candidates for the position of superintendent.

On the basis of these findings the trial court concluded that:

2. The closed meetings held by the defendants on and after March 14, 1977 were official meetings of the Charlotte-Mecklenburg Board of Education as defined in N.C. G.S. 143-318.2, held for the purpose of conducting and otherwise transacting public business within the jurisdiction of said Board.

3. Said meetings were not held pursuant to a vote of the majority of the members of the Board during a regular or special meeting when a quorum was present, in violation of N.C. G.S. 143-318.3.

4. The actions of the defendants were willful and constitute indirect criminal contempt of the order of this Court entered April 15, [sic] 1977.

From the order imposing a $50 fine on each of the individual defendants, the defendants appealed.

*Paul L. Whitfield for the plaintiff appellees.*

*Weinstein, Sturges, Odom, Bigger & Jonas, by William W. Sturges, for the defendant appellants.*

*Fleming, Robinson & Bradshaw, by Russell M. Robinson II, for defendant appellant, A. Ward McKeithen.*

HEDRICK, Judge.

The order of 19 July 1973 which the defendants allegedly violated was not appealed. Therefore, since the trial court was empowered to issue such an order, the parties were bound thereby even if it is later found to be based on a misinterpretation of the law. Dissatisfaction with an order should be expressed through appeal, not by open defiance. *Massengill v. Lee*, 228 N.C.

35, 44 S.E. 2d 356 (1947); *Elder v. Barnes*, 219 N.C. 411, 14 S.E. 2d 249 (1941); Annot., 12 A.L.R. 2d 1059 (1950). Accordingly, the question of whether the Open Meetings Law, G.S. 143-318.1, *et seq.* is applicable to local school boards is not before us at this time. In this connection *see Student Bar Association v. Byrd*, 293 N.C. 594, 239 S.E. 2d 415 (1977).

The defendants concede that they were bound by the order of 19 July 1973. They deny, however, that they willfully violated the order by conducting the closed sessions during March, 1977. By that order the defendants were restrained from holding executive or closed sessions except in accordance with G.S. 143-318.3. Thus, for the purpose of this appeal we must assume that G.S. 143-318.2 governs the defendants in the performance of their duties and determine whether they acted within the exceptions of G.S. 143-318.3 in holding the closed sessions.

The controlling statute, G.S. 143-318.3, reads in pertinent part as follows:

> *Executive, closed and private sessions.* — (a) Any of the bodies specified in G.S. 143-318.1, by the votes of a majority of its members present, may, during any regular or special meeting when a quorum is present, hold an executive session and exclude the public while considering:
>
>      . . . .
>
> (b) This Article shall not be construed to prevent any governing or governmental body specified in G.S. 143-318.1 from holding closed sessions to consider information regarding the appointment, employment, discipline, termination or dismissal of an employee or officer under the jurisdiction of such body . . . .

As an initial observation we feel compelled to express our agreement with the trial judge in his opinion that "the provisions of Article 33B of Chapter 143 of the General Statutes, and especially the provisions of G.S. 318.3(b) [sic] are not paragons of legislative draftsmanship." Nevertheless, we must attempt to discern from the terms of these statutes and from the avowed policy of the Open Meetings Law, G.S. 143-318.1, the intent of the legislature in its enactment thereof. *Stevenson v. City of Durham*, 281 N.C. 300, 188 S.E. 2d 281 (1972).

The defendants argue that in March, 1977, they were interviewing candidates for the office of school superintendent, that they were authorized to do so in closed sessions by Subsection (b) of the foregoing statute, and that it was not necessary to conduct the closed sessions pursuant to a vote by a majority of the members in regular session. The plaintiffs apparently do not challenge the defendants' contention that their deliberations were excepted from general coverage of the Open Meetings Law by the operation of Subsection (b). They argue instead that "Judge Snepp and the parties intended for the terms 'executive' and 'closed' to be interchangeable and for the procedures of the Statute to apply equally to either type of meeting."

It is true that in his order of 21 April 1977 the trial judge used the terms interchangeably and failed to recognize any distinctions between the several subsections of G.S. 143-318.3. Furthermore, in support of his conclusion that the defendants had violated G.S. 143-318.3(b) the trial judge seemed to impute the procedural requirements of Subsection (a) to Subsection (b). That portion of his order reads as follows:

> The selection of a superintendent for the Charlotte-Mecklenburg school system is a part of the public's business within the jurisdiction of the defendant Board and its members. The individual defendants attended the meetings and asked questions of the candidates in furtherance of that public business. The Board members, as evidenced by the minutes of the meeting and the testimony of Mr. Culbertson, themselves realized that interviews with potential employees were matters within the exception of 143-318.3(b) permitting closed sessions to be held to consider information regarding the appointment of any employee under the jurisdiction of the Board. Because, according to the testimony, they felt that the candidates for the position would not want it known that they were being considered, they withheld notice of the time and place of the interviews from the public. This is in clear violation of the policy of the State of North Carolina as stated in G.S. 143-318.1, and of the prohibition of closed meetings contained in G.S. 143-318.2.

However, the order which the defendants were held to have violated does not reflect any such understanding between the

trial judge and the parties. As previously quoted, that order simply enjoins the defendants from holding closed or executive meetings "except as to those matters specified in N.C. G.S. 143-318.3, and then only after having followed the procedure prescribed therein for holding an executive or closed session."

We are also aware that the guidelines which were drafted by the parties and incorporated into the order of 19 July 1973 tend to support the plaintiffs' argument that the parties understood the procedural requirements to be identical with regard to executive or closed sessions. While these guidelines blur any distinction between the types of meetings from which the public can be excluded, they were not made a part of the order until after the meetings of March, 1977, which formed the basis of the contempt adjudication. We will not give the guidelines retroactive effect; nor will we impute notice to the defendants that they were acting in violation of the spirit of the 19 July 1973 order. The record discloses that the defendants were unclear as to their statutory obligations and thus, sought the advice of the school board counsel as to the procedural prerequisites to conducting closed meetings for the purpose of interviewing candidates for school superintendent. The counsel advised the defendants that they could hold closed meetings to interview candidates without a public resolution but admonished them against discussing among themselves the relative merits of the interviewees. This evidence indicates only that the defendants were attempting to carry out their duties in accordance with the Open Meetings Law and thus, in accordance with the order of 19 July 1973.

Accordingly, the narrow question presented in this case is whether the defendants actually violated G.S. 143-318.3(b) in holding the closed meetings of March, 1977, in the absence of a prior public resolution. In our opinion the legislature drew a clear distinction between "executive sessions" and "closed sessions." And this distinction gives rise to different procedural requirements.

The pertinent section of our General Statutes which is entitled "Executive, closed and private sessions," suggests three distinct subsections, each complete in itself and not to be integrated with any other. Subsection (a) enumerates the topics for deliberation in executive sessions and sets out the procedural

prerequisites to holding such meetings. Subsection (b) authorizes closed sessions for the specified purposes but omits the procedural requirements applicable to Subsection (a).

It is an axiom of statutory construction that when the language of a statute is understandable on its face " 'there is no room for judicial construction and the courts must give it its plain and definite meaning, and are without power to interpolate, or superimpose, provisions, and limitations not contained therein.' " *State v. Camp*, 286 N.C. 148, 209 S.E. 2d 754 (1974). Therefore, we are without power to graft the procedural requisites of Subsection (a) on Subsection (b) even if we had an inclination to do so. However, we think the omission of these requirements in Subsection (b) can be explained by reference to the nature of the subjects to be discussed in executive and closed sessions. Closed sessions in Subsection (b) are authorized for the consideration of delicate matters of employment, discipline and dismissal which if subject to the procedural requirements of Subsection (a) could unfairly infringe upon the privacy of the individuals concerned. Significantly, the evidence in this case reflects the concern on the part of the defendants that a resolution passed in regular session giving notice to the public of the time and place that candidates for school superintendent would be interviewed, would deter prospective candidates from applying for the job for fear of jeopardizing relations with their present employers.

While the rather curious wording of Subsection (b) obscures the legislative intent with respect to the meaning and scope of that provision, *see* Lawrence, D. M., Interpreting North Carolina's Open-Meetings Law, 54 N.C. L. Rev. 777, 797 (1976), the statute is quite clear in its differentiation of executive and closed sessions. Since the procedural prerequisites to holding an executive session pursuant to Subsection (a) do not appear in Subsection (b), we hold that it was not necessary for the defendants to adopt a resolution prior to conducting the closed sessions in March, 1977. Thus, the trial court's conclusion that the defendants' conduct violated the terms of G.S. 143-318.3 was not supported by the facts found. The order appealed from is reversed.

Reversed.

Judges PARKER and MITCHELL concur.